PEARSON, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| WESTERN DIGITAL TECHNOLOGIES, INC., | ) ) | CASE NO. 5:17CV2653 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| XYZ CORPORATION, *et al.*, | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** [Resolving ECF Nos. 32, 42, 43, |
| Defendants. | ) | 50] |

Four matters are before the Court. First, Plaintiff Western Digital Technologies, Inc. ("Western Digital") notifies the Court that it has voluntarily dismissed Chi Fan Lau as a party without prejudice because it has discovered that he was not properly served with process. ECF No. 42. Second, Plaintiff Western Digital moves for summary judgment against Defendant Aiting Li. ECF No. 32. Third, Western Digital moves for default and default judgment against named individual Defendants not including Aiting Li. ECF No. 43. Fourth, named Defendants not including Aiting Li move for summary judgment against Western Digital. ECF No. 50.

The Court has considered the parties' briefs, the record, and the applicable law. For the reasons given below, Defendant Chi Fan Lau is dismissed, Western Digital's motion for summary judgment against Aiting Li is granted as to liability only, Western Digital's motion for default and default judgment against certain Defendants is denied, and certain Defendants' motion for summary judgment against Western Digital is granted as to all claims.

## I. Background

Defendant Aiting Li is a Chinese national living in Stow, Ohio. ECF No. 36-1 at PageID#: 855. Her mother Yong Chang Chen (or "Yong Lau"), as well as other members of her extended family,[1] all named Defendants, live in three nearby homes in Stow. *Id.* at PageID#: 855, 860-65; *see* ECF No. 33-1 at PageID#: 474.

Aiting Li maintains a business called "Daigou," in which she purchases goods in the United States on behalf of clients then ships those goods to her clients in China. ECF No. 36-1 at PageID#: 873-74. She charges a transactional fee for her services. *Id.* In her Daigou business, she profits between $2,000 and $5,000 (U.S. dollars) per month. *Id.*

On June 7, 2017, Aiting Li was introduced to one "Shawn" through a former colleague who worked at DHL, a shipping service company, in Guangzhou, China. *Id.* at PageID#: 878-79. She never met Shawn or learned his full name, or whether Shawn was his real name. *Id.* at PageID#: 878; *see id.* at PageID#: 881. She spoke with him on the phone only once, for about fourteen minutes. *Id.*; *see* ECF No. 33-3 at PageID#: 541. Apart from the one phone call, Aiting Li communicated with Shawn through a messaging function called WeChat. *See* ECF No. 33-3.

Aiting Li and Shawn came to an arrangement by which Shawn would send boxes of defective hard drives to Aiting Li, and Aiting Li would re-label the boxes and send them to Western Digital to be replaced with working hard drives through a warranty program. ECF No. 34 at PageID#: 636-37. When Aiting Li received boxes of replacement hard drives from Western

---

[1] Namely, her uncle Chen Zhuo Ren, her aunt Zhou Lijuan, her aunt Yong Xian Lau, her aunt Wendy Chen, her uncle Li Bo Liang, and her cousin Chen Yong Xian. ECF No. 36-1 at PageID#: 860-65. Each one is a named Defendant, and Western Digital moves for default and default judgment against each of them. ECF No. 43.

Digital, she was to ship them to an address in Hong Kong that Shawn provided. *Id.* at PageID#: 637. Shawn supplied the shipping labels and arranged the warranty exchanges with Western Digital. *Id.* at PageID#: 637-38. On receipt of boxes from Shawn, Aiting Li opened and unpacked the defective hard drives, then re-packed and sent them to Western Digital. ECF No. 33-3 at PageID#: 572-76; ECF No. 40-1 at PageID#: 1069, ¶ 50-51. The record is not clear as to whether she also inspected boxes of genuine hard drives from Western Digital before shipping them to Shawn's address in Hong Kong.

The warranty exchanges were part of Western Digital's return-and-replace program, through which certain customers and resellers can return defective hard drives to Western Digital in exchange for new ones. ECF No. 33-1 at PageID#: 424, ¶ 15. To initiate the warranty return process, a customer or reseller must obtain a Return Merchandise Authorization ("RMA") from Western Digital. *Id.*, ¶ 16. That process requires the customer or reseller to create an account with his contact information, and for each RMA request, he must input the product names and serial numbers of the hard drives he plans to submit for replacement. *Id.*, ¶ 17. An "indirect business account" holder can request up to 20 hard drives to be replaced on a single RMA. *Id.* After Western Digital receives the defective hard drives, its personnel inspect them for authenticity and functionality and, if appropriate, they ship replacement hard drives to the RMA requester. *Id.* at PageID#: 424-25, ¶ 18.

Shawn had access to counterfeit hard drives bearing false Western Digital labels and serial numbers that corresponded to hard drives that Western Digital had actually produced and sold. *See id.* at PageID#: 425, 431-32, ¶¶ 19, 49, 50. The hard drives that Shawn shipped to

Aiting Li (which she was to forward along to Western Digital) were counterfeit, but they were "of sufficiently high quality that they often passed Western Digital's initial inspection." *Id.* at PageID#: 431-32, ¶ 50; *see generally id.* at PageID#: 425-34. The hard drives that Western Digital sent to Aiting Li, which Aiting Li, in turn, shipped back to Shawn, were genuine. *See id.* For each hard drive that Aiting Li shipped to Hong Kong, Shawn paid her 30 renmibi (about $4.40 U.S. dollars). ECF No. 40-1 at PageID#: 1067, ¶ 21; *see* ECF No. 33-3 at PageID#: 539.

Because each indirect business account could sustain only 20 RMA requests at any given time, Shawn continually created new, fraudulent accounts with Western Digital to facilitate his scheme. *See* ECF No. 33-1 at PageID#: 425. Those account names went by the names "Miuli Technology," "Miului Technology," "Miu Kiu Inc.," "Miuniu Computer Inc.," "Micro Technology Concepts," "Micro Cncepts," "Miu Li," "GLF Inc.," "GLF Miu," and "GLF PTE," "GLF LI," and "GLF MIN." ECF No. 33-1 at PageID#: 431-33, ¶¶ 48, 53, 55. Also to avoid being detected, Shawn asked Aiting Li whether she had additional addresses to which he could arrange for replacement hard drives to be sent. ECF No. 33-3 at PageID#: 558-70. Without probing why additional addresses would be necessary, Aiting Li supplied two addresses (where her extended family lived) in addition to her home address. *Id.* At least once, and still to avoid detection by Western Digital, Shawn "changed" the addresses in his RMA requests by making minor alterations such as omitting the space between the address number and the street name, giving the impression that his RMA requests had originated from a new location. *See* ECF No. 33-1 at PageID#: 426, ¶ 24. Aiting Li knew that Shawn made these "minor changes" to the

addresses she supplied in order to avoid detection and facilitate additional warranty returns, but she expressed no concern. *See* ECF No. 33-3 at PageID#: 565.

Western Digital kept records of every fraudulent RMA request associated with Shawn and Aiting Li. *See* ECF No. 33-1 at PageID#: 457-66. All told, Shawn and Aiting Li submitted 477 counterfeit hard drives and requested 477 genuine hard drives, of various models and bearing various trademarks, as replacements. *Id.* Not every counterfeit hard drive fooled Western Digital's inspection personnel, however. *Id.* at PageID#: 424-34. According to Western Digital Senior Legal Counsel Rebecca Unruh, 314 hard drives were identified as counterfeit, and the corresponding RMA requests were not fulfilled. *Id.* Western Digital fulfilled only 163 of Shawn and Aiting Li's RMA requests.[2] *Id.*

Western Digital brings this action against Aiting Li and the individuals who live at the three addresses at which she received genuine hard drives from Western Digital for trademark infringement and other trade deception under the Lanham Act, 15 U.S.C. § 1125(a). ECF No. 1. Western Digital's motion for summary judgment, however, pertains only to Aiting Li. ECF No. 32. Shawn is not a defendant in this action.

## II. Standards of Review

### A. Voluntary Dismissal Without Prejudice (ECF No. 42)

Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), "the plaintiff may dismiss an action without a court order by filing a notice of dismissal before the opposing party serves either an answer or a

---

[2] Of those 163, Western Digital identified eight as fraudulent but nevertheless shipped genuine hard drives to Aiting Li in order to aid its investigation. ECF No. 33-1 at PageID#: 433-34.

motion for summary judgment."  Such a dismissal is without prejudice, Fed. R. Civ. P. 41(a)(1)(B), and dismissal by timely unilateral notice occurs without the Court's intervention. *D.C. Electronics, Inc. v. Narton Corp.*, 511 F.2d 294, 296 (6th Cir. 1975).  "The notice of dismissal with the clerk itself closes the file."  *Id.* (quotation marks and citation omitted).

### B.  Summary Judgment (ECF Nos. 32, 50)

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial."  *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute.  An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury."  *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).  To defeat the motion, the non-moving party must "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant."  *Guarino*, 980 F.2d at 403.

(5:17CV2653)

In reviewing a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

"The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). The fact under dispute must be "material," and the dispute itself must be "genuine." A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Scott*, 550 U.S. at 380. In determining whether a factual issue is "genuine," the Court assesses whether the evidence is such that a reasonable jury could find that the non-moving party is entitled to a verdict. *Id.* ("[Summary judgment] will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

**C. Default and Default Judgment (ECF No. 43)**

Pursuant to Fed. R. Civ. Pro. 55(a), the clerk must enter default "[w]hen a party against whom a judgment for affirmative relief is sought," and that party, properly served, "has failed to plead or otherwise defend . . . ." "Once default is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint regarding liability . . . ." *Zinganything, LLC v. Imp. Store*, 158 F. Supp. 3d 668, 670 (N.D. Ohio 2016).

To effectuate a default judgment, the Court must determine the appropriate relief. Fed. R. Civ. Pro. 55(b)(2). Allegations relating to damages are not deemed admitted by virtue of default.

7

(5:17CV2653)

*Zinganything*, 158 F. Supp. 3d at 670; *see* Fed. R. Civ. Pro. 8(b)(6).  Relief granted by default

judgment "must not differ in kind from, or exceed in amount, what is demanded in the

pleadings."  Fed. R. Civ. Pro. 54(c).  If necessary, the Court may conduct hearings or otherwise

investigate to determine the appropriate amount of damages.  Fed. R. Civ. Pro. 55(b)(2).

### III.  Law and Analysis

#### A.  Voluntary Dismissal Without Prejudice (ECF No. 42)

Western Digital has notified the Court that it voluntarily dismisses, without prejudice, its

claims against Defendant Chi Fan Lau, ECF No. 42, because the latter was not properly served

with process, ECF No. 43-1 at PageID#: 1187 n.2.  Defendant Chi Fan Lau has neither answered

the Complaint nor filed a motion for summary judgment, nor had his co-defendants at the time

the notice of dismissal was filed.  Voluntary dismissal, therefore, is appropriate pursuant to Fed.

R. Civ. P. 41(a)(1)(A)(i).  Defendant Chi Fan Lau is dismissed.

#### B.  Summary Judgment Against Aiting Li (ECF No. 32)

Western Digital also moves for summary judgment against Aiting Li because, it argues,

there is no genuine dispute of material fact as to her liability, and Western Digital is entitled to

judgment as a matter of law.  ECF No. 32.  Aiting Li responded, ECF No. 40, and Western

Digital replied, ECF No. 45.[3]

Western Digital argues that Aiting Li infringed its trademarks and violated 15 U.S.C. §

1125(a).  ECF No. 33.  Aiting Li concedes that, between June and December 2017, she was in

---

[3] Aiting Li also filed a sur-reply.  ECF No. 49.  Because she did so without the
Court's leave, her sur-reply is stricken.

the business of shipping junk hard drives bearing counterfeit Western Digital labels and false

serial numbers and receiving genuine Western Digital hard drives in exchange. ECF No. 40-1 at

PageID#: 1066-71. She argues, however, that she should not be held responsible for infringing

Western Digital's trademarks because she was an innocent intermediary between Shawn and

Western Digital, and because she did not know that the hard drives she sent to Western Digital

were fake or that the exchange requests were fraudulent. ECF No. 40-2 at 1086-98 ("If I knew in

advance that Shawn was doing something illegal, I would definitely never participate. . . . My

function [was] more like a post office, receiving and shipping.").

In relevant part, the Lanham Act, 15 U.S.C. § 1125(a), reads:

(1) Any person who, on or in connection with any goods or services, or any
container for goods, uses in commerce any word, term, name, symbol, or device,
or any combination thereof, or any false designation of origin, false or misleading
description of fact, or false or misleading representation of fact, which

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the
affiliation, connection, or association of such person with another person,
or as to the origin, sponsorship, or approval of his or her goods, services,
or commercial activities by another person . . .

shall be liable in a civil action by any person who believes that he or she is or is
likely to be damaged by such act.

Aiting Li is liable under the Lanham Act if, (1) in connection with any goods, she (2)

used in commerce (3) any symbol or false representation of fact, (4) which was likely to cause

confusion or mistake as to the origin or approval of those goods. 15 U.S.C. § 1125(a).

False representation under § 1125(a) is a strict-liability statutory tort. "Under § 43(a) of

the Lanham Act [15 U.S.C. § 1125(a)] it is not necessary to show that any false description or

representation is wilful or intentional." *Frisch's Restaurants, Inc. v. Elby's Big Boy of*

*Steubenville, Inc.*, 670 F.2d 642, 647 (6th Cir. 1982) (citing *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 648 (3d Cir. 1958)). *See also Brandt Consol., Inc. v. Agrimar Corp.*, 801 F. Supp. 164, 174 (C.D. Ill. 1992) ("The well-settled rule is that there is no requirement under the Lanham Act that a false representation be made willfully or with the intent to deceive. A mistake is not a defense to an action under [§ 1125(a)]."), *abrogated on other grounds by Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1344 (Fed. Cir. 1999). "All that is required is that the representation or descriptions either be 'false' or such as is 'tending falsely to describe or represent the goods or services in question.'" *Frisch's Restaurants*, 670 F.2d at 647 (citation omitted).

Aiting Li contends that she cannot be liable for infringement because she was "deceived and used by Shawn," and that her only responsibility in Shawn's scheme was to behave "like a post office, receiving and shipping." ECF No. 40-2 at PageID#: 1097-98. She was not, however, blind to the contents of the packages she shipped. At least the first time that Shawn sent her a box of hard drives, she "opened each box [inside the larger box] and checked if those were hard drives." ECF No. 40-1 at PageID#: 1069, ¶ 50. She "saw that each of the boxes contained the sealed hard drives with Western Digital's logo . . . ." *Id.*

Whether or not she acted willfully or with the intent to deceive, Aiting Li shipped more than 400 junk hard drives (goods) bearing imitation Western Digital trademarks (a symbol and a false representation of fact) to Western Digital. ECF No. 34 at PageID#: 641. Those imitation trademarked products were likely to cause mistake, and they did in fact cause Western Digital personnel to mistake the authenticity of the false hard drives. *See id.* Those mistakes, in turn,

led Western Digital to ship genuine hard drives to its deceivers at no cost.  ECF No. 33-1 at PageID#: 424-33.

One might protest that Western Digital is not a *consumer* but rather a *producer*, and, therefore, its own employees' mistake as to the authenticity of the counterfeit hard drives is not the kind of "confusion" or "mistake" envisioned by § 1125(a).  Section 1125(a), however, is not so narrow.  "For likelihood of confusion to be actionable, the confusion has to exist in the mind of a relevant person." *Beacon Mut. Ins. Co. v. OneBeacon Ins. Group*, 376 F.3d 8, 10 (1st Cir. 2004) (quotation marks and citation omitted).  "Confusion is relevant when it exists in the minds of persons in a position to influence the purchasing decision or persons whose confusion presents a significant risk to the sales, goodwill, or reputation of the trademark owner." *Id.*  In this case, Western Digital's employees' confusion presented a significant risk to Western Digital's sales; indeed, their confusion caused Western Digital to give away hard drives for free rather than sell them on the market.  Neither the text of the statute nor pertinent case law forecloses this application of the term "confusion" or "mistake" under § 1125(a).

It is true that, regarding § 1125(a), the Sixth Circuit has written, "The ultimate question remains whether relevant consumers are likely to [be confused or mistaken]." *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 793 (6th Cir. 2004) (quoting *Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991)).  The Court declines to read into that language a strict requirement that  "confusion" or "mistake" be applied only to end consumers, however, because in neither *AutoZone* nor *Homeowners Group* did the plaintiffs allege that anyone other than end consumers would be confused or mistaken.  There was no need

in either case for the Court of Appeals to distinguish between confusion or mistake of end consumers and confusion or mistake of another relevant set of persons.  It is no surprise that the court, on such facts, spoke in terms of the end consumer and declined or omitted to account for confusion or mistake by someone else in the chain of commerce.

The same is true of *Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d 619, 623 (6th Cir. 1996) ("The general requirement underlying a showing of the likelihood of confusion is that the public believes that the mark's owner sponsored or otherwise approved the use of the trademark." (quotation marks and citation omitted)), and similar cases.  The plaintiff in *Holiday Inns* alleged that the public was likely to be confused, so it is unsurprising that the court in that case spoke in terms of confusion to the public rather than confusion to some other set of persons. The court's language should not be taken to mean that end consumers are the only persons capable of "confusion" or "mistake" as those terms are used in § 1125(a).

The First Circuit, however, had the opportunity to draw a distinction between consumers and nonconsumers in *Beacon Mutual*, 376 F.3d 8.  In *Beacon Mutual*, the defendant posited that "the confused persons were not those who made purchasing decisions and there was no evidence that their confusion caused Beacon Mutual to lose sales." *Id.* at 10.  Nevertheless, the Court held the defendant liable under § 1125(a) because § 1125(a) "is not restricted" to confusion or mistake of "actual and prospective buyers of the product in question." *Id.*  In the instant case, it makes little difference that Western Digital employees, rather than end consumers, were the ones who were confused and mistaken by the counterfeit marks.  It caused no less harm to Western Digital that its employees, rather than end consumers, were swindled.

(5:17CV2653)

The remaining question is whether Aiting Li "use[d]" the false Western Digital marks "in commerce." *See* 15 U.S.C. § 1125(a). According to her deposition testimony, Aiting Li is engaged in a business known as "Daigou," by which she purchases items in the United States, ships them to individuals in China, and charges those individuals a fee. ECF No. 36-1 at PageID#: 873. She describes this activity as a "part-time job" and as "[her] business." *Id.* at PageID#: 874. She keeps records of the price, the profit, and the recipient of each Daigou transaction. *Id.* at PageID#: 873.

Aiting Li's agreement with Shawn to ship hard drives within the United States and from the United States to Hong Kong was part of a warranty return-and-replacement program. ECF No. 34 at PageID#: 636-38, ¶¶ 23-26, 37; ECF No. 36-1 at PageID#: 879-80. Aiting Li exchanged bad hard drives for good ones as though she and Shawn were bona fide customers requesting merchandise from a seller in satisfaction of a warranty. She traded on the value of the hard drives' apparent authenticity.

There is thus no genuine dispute of material fact as to the following: Aiting Li used Western Digital's trademarks in commerce, in connection with containers of junk hard drives, in such a way that was likely to cause confusion or mistake as to the origin or approval of those hard drives. Accordingly, she is liable for trademark infringement under 15 U.S.C. § 1125(a). Western Digital's motion for summary judgment as to Aiting Li (ECF No. 32) is granted with respect to liability.

**C.  Default and Default Judgment (ECF No. 43)**

(5:17CV2653)

On October 22, 2018, Western Digital moved the Court to enter default and to issue default judgment against Defendants Yong Xian Lau (also known as Chen Yong Xian), Yong Chen, Wendy Chen (also known as Chen Yong Yi), Li Bo Liang, Li Juan Zhou, and Zhou Ran Chen (also known as Chen Zhou Ren). ECF No. 43. On November 19, 2018, Attorney Michael W. Vary filed his appearance on behalf of all six Defendants.[4] ECF Nos. 46, 47. On December 6, 2018, after obtaining an extension of time, those six Defendants filed their opposition to default and default judgment. ECF No. 50.

Though tardy, these Defendants are not in default. They failed to answer the Complaint, and certain of them failed to attend the preliminary-injunction hearing on January 17, 2018. After the preliminary-injunction hearing, they made no formal efforts to resolve the case or remove themselves from the proceedings. Until November 19, 2018, Aiting Li was the only Defendant who had filed a single paper on the docket. Nevertheless, these Defendants' opposition to default and default judgment and their cross-motion for summary judgment (ECF No. 50) does not reflect the failure "to plead or otherwise defend" contemplated by Fed. R. Civ. P. 55(a). The Court finds that Defendants are not in default, therefore, and neither default nor default judgment is appropriate.[5] Western Digital's motion to that effect (ECF No. 43) is denied.

_____

[4] According to the text of his November 19, 2018, docket entry, Attorney Vary purports to also represent Defendant Aiting Li. ECF No. 46 (docket text). The corresponding document, however, does not list Aiting Li's name as a party whom he is authorized to represent. ECF No. 46. In addition, on November 29, 2018, Aiting Li submitted a filing on her own behalf. ECF No. 49. Notwithstanding the docket text accompanying ECF No. 46, the Court perceives that Aiting Li is still proceeding *pro se*.

[5] The Court observes that, even if default and default judgment were granted,

(continued...)

**D. Summary Judgment Against Western Digital (ECF No. 50)**

Named individual Defendants not including Aiting Li filed a cross-motion for summary judgment against Western Digital, arguing that Western Digital has produced no facts supporting liability against them. ECF No. 50. Although the motion is styled a "motion to dismiss," the explicit reference to "Rule 56" and the persistent citations to record evidence make plain that the motion is, in substance, a motion for summary judgment. Despite the errant nomenclature, the Court treats the motion as one for summary judgment pursuant to Fed. R. Civ. P. 56 and discounts Western Digital's argument in opposition to the extent that it interprets Defendants' motion as arising under Fed. R. Civ. P. 12.[6]

In support of their motion for summary judgment, Defendants attach an affidavit of Defendant Yong Xian Lau, Aiting Li's aunt. ECF No. 50-1. In that affidavit, Yong Xian Lau attests, "None of us (Wendy Chen, Li Juan Zhou, Zhou Ran Chen, Yong Chen, Li Bo Liang or me) has ever handled a Western Digital hard drive or a fake drive that imitates a Western Digital

---

[5](...continued)
relevant Defendants would nevertheless remain entitled to dispute whether the allegations in Western Digital's pleadings, taken as true, amount to legal liability. *See Gen. Conference Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 407 (6th Cir. 2010) ("A default judgment does not preclude review of whether the allegations in the complaint, if taken as true, were sufficient to state a claim and support a judgment of liability.").

[6] Specifically, the Court rejects Western Digital's arguments that Defendants' motion is untimely, *see* ECF No. 53 at PageID#: 1447-48, and that the motion should fail because Western Digital's Complaint features well-pleaded allegations, *see id.* at PageID#: 1448-49. The Court engages with Western Digital's opposition brief only insofar as it attempts to reveal a genuine dispute of material fact or otherwise argues that the prerequisites of Rule 56 have not been satisfied.

Drive." *Id.* at PageID#: 1439. "None of us," she attests, "has ever distributed any Western Digital hard drives or a fake drive that imitates a Western Digital drive to anyone." *Id.* "None of us . . . has ever obtained any junk hard drives, used fake serial numbers or marks similar to Western Digital's Mark." *Id.* "None of us . . . has ever contacted Western Digital to request RMA numbers or anything else for that matter. None of us . . . has ever sent any hard drives to Western Digital for any reason." *Id.* She also attests, "To my knowledge, none of my relatives had any idea what Aiting Li was doing, and she never explained what she was doing to anyone." *Id.* at PageID#: 1437.

Despite having been granted an extension of time to respond to Defendants' summary-judgment motion, Western Digital supplied no evidence to rebut Yong Xian Lau's affidavit. *See* ECF Nos. 52, 53. In its opposition brief, Western Digital attempts to discredit the affidavit as "self-serving," ECF No. 53 at PageID#: 1449, but it marshals no evidence of its own to contradict it. Moreover, of the whole repertoire of evidence that Western Digital advances against Aiting Li in support of summary judgment, *see* ECF Nos. 33, 34, 35, 36, the Court observes none that implicates Yong Xian Lau, Yong Chen, Wendy Chen, Li Bo Liang, Li Juan Zhou, or Zhou Ran Chen.

Rather than demonstrate the existence of a genuine issue of material fact, Western Digital argues that the matter is not ripe for summary judgment because Western Digital never had the opportunity to pursue discovery against the relevant Defendants. *Id.* at PageID#: 1449-50. This argument mischaracterizes Western Digital's litigation and discovery strategy in this case, and it fails to meet the requirements of Rule 56.

At the commencement of the litigation, Western Digital did not know which Defendants were involved in the fraudulent scheme or how they were involved.  *See* ECF No. 8 at PageID#: 143-44.  It knew, rather, the three physical addresses from which and to which hard drives were being shipped, and it named as defendants all adults that were associated with those addresses, hoping thereby to capture the culprit or culprits.  *See* ECF No. 6 (*ex parte*) at PageID#: 87 (listing addresses).  (As a result of its dragnet approach to identifying defendants, Western Digital errantly named Chi Fan Lau, who has not lived at any of the subject addresses for over twenty years.  ECF No. 1; ECF No. 50-1 at PageID#: 1438.)  Western Digital moved the Court for an *ex parte* seizure order at the three known addresses, ECF No. 6, and that motion was granted, ECF No. 14.

After the seizure was carried out and a preliminary injunction was issued against all Defendants, Western Digital focused its attention on a singular Defendant, Aiting Li.  Western Digital executed a cooperation agreement with her, *see* ECF No. 36-1 at PageID#: 853, and conducted an extensive deposition of her, ECF Nos. 35, 36, despite the fact that Aiting Li had not filed an answer or other responsive pleading or motion.  Western Digital had found its culprit.  In her affidavit, Yong Xian Lau attests that Western Digital's attorneys, in private conversation through an interpreter, advised that they planned to drop the case against all Defendants except Aiting Li.[7]  Western Digital did not turn its attention back to the other named individual

---

[7] The Court cites this representation not to suggest that Western Digital had, in fact, dismissed its claims against the remaining Defendants, but rather to demonstrate that Western Digital had apparently resolved to focus its discovery efforts narrowly on Aiting Li.

Defendants until, on October 15, 2018, the Court directed it to show cause why the claims

against those Defendants should not be dismissed for want of prosecution.  *See* ECF No. 39.

Western Digital has not been "deprived . . . of the opportunity to develop contrary

evidence" against the relevant Defendants.  *See* ECF No. 53 at PageID#: 1540.  It insists that it

was unable to obtain discovery of these Defendants because they had not pleaded in response, but

it declines to explain how, in that case, it was able to obtain evidence from Aiting Li despite her

identical failure to plead.  Despite having been granted an extension of time to respond in

opposition to the motion for summary judgment, Western Digital apparently did not attempt to

obtain discovery from Defendants or ask the Court for more time to do so.  Additionally,

Western Digital acknowledges that most of the relevant Defendants "appeared at the court's

preliminary injunction hearing and have generally been cooperative . . . ."  ECF No. 33 at

PageID#: 395 n.1.  To the extent that Western Digital insists that it needs additional evidence in

order to resist summary judgment, it does not request the opportunity to take it, nor does it

support any such argument or request with an affidavit or declaration as required by Fed. R. Civ.

P. 56(d).

Western Digital has not advanced a single item of evidence implicating Yong Xian Lau,

Yong Chen, Wendy Chen, Li Bo Liang, Li Juan Zhou, or Zhou Ran Chen in the fraudulent hard-

drive scheme.  Defendants, by contrast, have submitted a sworn affidavit disclaiming any

involvement in that scheme.  ECF No. 50-1.  Western Digital has not attempted to rebut that

affidavit, nor has it requested time to take discovery, pursuant to Fed. R. Civ. P. 56(d)(2), in

hopes of rebutting it.  The Court finds that there is no genuine issue of material fact, and all

named individual Defendants other than Aiting Li are entitled to judgment as a matter of law. Summary judgment, therefore, is granted in their favor as to all claims.

### E. Appropriate Relief

What remains is the question of appropriate relief as against Aiting Li. In its motion for summary judgment, Western Digital asks the Court to award statutory damages against Aiting Li in the amount of $270,000. ECF No. 33 at PageID#: 413. Western Digital also asks the Court to award attorney fees and costs. ECF No. 33 at PageID#: 414.

#### 1. Damages

Western Digital asks for damages as against Aiting Li. ECF No. 27. ECF No. 33 at PageID#: 405-14. Western Digital frames its request as one for statutory damages under § 1117(c), but its argument sounds in actual damages under § 1117(a). Whereas statutory damages are ordinarily calculated by multiplying the number of trademarks infringed by the perceived value of each infringed mark, actual damages are usually gauged by assessing actual loss to the plaintiff and/or actual profit to the defendant. Western Digital points to actual loss and actual profit to support its proposed damages figure. Western Digital's request for damages, therefore, is best construed as a request for actual damages, subject to the terms of § 1117(a), not statutory damages.

With the argument and evidence before it, however, the Court is not equipped to reach a conclusion on the topic. The argument advanced by Western Digital conflicts with its evidence, and Aiting Li's argument and evidence contradict both. Certain discrepancies are outlined below.

First, in its briefing, Western Digital asserts that it "suffered a loss in value of hard drives of around \$108,000," ECF No. 33 at PageID#: 409; ECF No. 43-1 at PageID#: 1191; *see* ECF No. 33 at PageID#: 413 ("\$108,000 in damages"), because Aiting Li "caused Western Digital to ship \$108,000 worth of genuine hard drives to Defendants at their residences . . . ." ECF No. 33 at PageID#: 409; *see* ECF No. 33 at PageID#: 411 ("receiving over 400 drives from Western Digital"); ECF No. 34 at PageID#: 641, ¶ 73 ("Western Digital personnel . . . sent hundreds of replacement drives to Ms. Li"). According to the declaration of Western Digital Senior Legal Counsel Rebecca Unruh, however, the majority of those RMA requests were detected as fraud and were never fulfilled. ECF No. 33-1 at PageID#: 424-34. According to her testimony, Western Digital fulfilled only 163 of the 477 fraudulent RMA requests. *See id.*, specifically ¶¶ 20-21, 22-23, 26-27, 29-30, 31, 34-35, 36-37, 38, 41, 44-45, 46-47, 53-54, 56-57, 59, 62 (indicating every instance in which Western Digital received RMA requests with junk hard drives and either did or did not fulfill the RMA requests); ¶¶ 21, 26, 31, 38, 41, 54, 57 (identifying the 163 fulfilled RMA requests). Western Digital's argument asserts a loss of 477 hard drives, but its evidence suggests an actual loss of only 163 hard drives.

The confusion is compounded by Defendant Aiting Li's argument and evidence, which suggests that Shawn paid her \$2,993 in total to account for both her profit and the prepaid shipping fees. *See* ECF No. 40-1 at PageID#: 1070, ¶¶ 64, 65; ECF No. 40-2 at PageID#: 1099. She also states that she sent 336 hard drives to Shawn's address in Hong Kong, ECF No. 40-2 at PageID#: 1098-1100, which conflicts with the numbers given in Western Digital's briefing and

in its witness's declaration.  ECF No. 33 at PageID#: 409; *see* ECF No. 33 at PageID#: 413; ECF No. 33-1 at PageID#: 424-33.

Additionally, in its estimation of ill-gotten profits, Western Digital acknowledges that Aiting Li profited 30 renmibi (approximately $4.40 USD) per hard drive that she shipped to Hong Kong.  ECF No. 33 at PageID#: 399; ECF No. 40-1 at PageID#: 1067, ¶ 21.  Nevertheless, Western Digital concludes that Aiting Li "profited roughly $90,940 from the 477 hard drives." ECF No. 33 at PageID#: 409; *see* ECF No. 33-5.  That conclusion springs from an estimation that, altogether, the schemers profited, on average, $190.65 per genuine replacement hard drive that Western Digital shipped.  Western Digital thus suggests an ill-gotten profit of $190.65 per hard drive even though it also acknowledges that Aiting Li profited merely $4.40 per hard drive.

Finally, Western Digital also urges that it is entitled to damages in excess of its loss because "the need for deterrence is immense."  ECF No. 33 at PageID#: 412; ECF No. 43-1 at PageID#: 1193.  The Court is skeptical, however, that deterrence should be considered as a factor in assessing damages given that Western Digital's loss can be conclusively quantified by multiplying the number of lost hard drives by the retail value of each.  *See* 15 U.S.C. § 1117(a) (the sum of damages "shall constitute compensation and not a penalty").

In light of the confusion, the Court requires further briefing and argument relating to damages.  Western Digital is directed to file a motion for damages no later than 30 days from the date of this Order, and explain its positions with respect to the above discrepancies.  Aiting Li shall respond within 30 days of that motion, and Western Digital shall reply within 14 days of

(5:17CV2653)

Western Digital's response.  A hearing will be scheduled to evaluate the parties' respective positions on damages.

## 2.  Attorney Fees and Costs

Western Digital asks the Court to award attorney fees and costs as against Aiting Li.  ECF No. 33 at PageID#: 414.  Attorney fees, on one hand, and litigation costs, on the other, are treated differently under the Lanham Act.  *See* 15 U.S.C. § 1117(a).  Western Digital is entitled to recover litigation costs.  *Id.* (If successful, "the plaintiff shall be entitled . . . to recover . . . the costs of the action.").  Western Digital is directed to tally its litigation costs and submit that figure to the Court along with a motion for costs within 30 days of the date of this Order.[8]

Attorney fees, however, may be awarded only "in exceptional cases."  *Id.*  Attorney fees should be awarded only when the trademark infringement "was malicious, fraudulent, willful, or deliberate," and when the defendant knew that she used the trademark maliciously and contrary to law.  *Sovereign Order of Saint John of Jerusalem, Inc. v. Grady*, 119 F.3d 1236, 1244 (6th Cir. 1997) (quoting *Hindu Incense v. Meadows*, 692 F.2d 1048, 1051 (6th Cir. 1982)).  Whether to award attorney fees is left to the Court's informed discretion.  *Id.*

All would likely agree that *Shawn's* infringement was malicious, fraudulent, and deliberate.  Based on the evidence, Shawn placed imitation trademark labels on junk hard drives, arranged for those counterfeits to be shipped to Western Digital, and requested and received genuine hard drives in return.  ECF No. 34 at PageID#: 636-41.  But the evidence does not make

---

[8] Aiting Li shall respond within 30 days of that motion, and Western Digital shall reply within 14 days of Western Digital's response.

obvious Western Digital's conclusion that Aiting Li herself acted maliciously and with knowledge that she was violating the law by agreeing to ship the hard drives back and forth.

Western Digital alleges that Aiting Li acted with "willful blindness" because she "suspect[ed] wrongdoing and deliberately failed to investigate." ECF No. 33 at PageID#: 396. As evidence that Aiting Li was willfully blind to Shawn's malicious fraud, Western Digital asserts that, over the course of six months,[9]

- Ms. Li did not look up Shawn's business or business address on the Internet, and had she looked up the address she would have realized that the address he gave her was incomplete;

- Ms. Li never asked Shawn about the source of the hard drives, including whether the hard drives were actually manufactured by Western Digital;

- Ms. Li never made Shawn explain why he sends the hard drives to her from Guangzhou but had Ms. Li send the replacement drives to a different company in Hong Kong;

- Ms. Li never asked Shawn what happens to the drives after she sends them to Hong Kong;

- Ms. Li never asked Shawn why he needed separate addresses in Stow, Ohio;

- Ms. Li never asked Shawn why he could not send the drives to Western Digital himself;

---

[9] Western Digital asserts in its brief that Aiting Li and Shawn worked together "for over seven months." ECF No. 33 at PageID#: 410. The first contact between Aiting Li and Shawn occurred on June 7, 2017, ECF No. 33-3 at PageID#: 539; ECF No. 36-1 at PageID#: 878, and the final shipment received by Western Digital from Aiting Li (on Shawn's behalf) arrived on December 6, 2017. ECF No. 33-1 at PageID#: 434. That time period spans exactly six months.

- Upon receiving a picture of a "business license" from Shawn, Ms. Li neither asked Shawn why he would be asking for a business license, nor looked up the business license number on the Internet;

- Despite receiving over 400 drives from Western Digital and opening each package, Ms. Li never visited Western Digital's website or contacted any employees at Western Digital;

- Ms. Li never investigated the Hong Kong address on the shipping labels from Shawn;

- Ms. Li never tracked the packages that were sent to Hong Kong; and

- Ms. Li never compared the hard drives received from Shawn to the hard drives she received from Western Digital.

ECF No. 33 at PageID#: 407-08; *see id.* at PageID#: 410-12.

Aiting Li challenges these factual assertions one by one. ECF No. 40-2 at PageID#: 1086-98. There remains, at least, a dispute of fact with respect to Aiting Li's mental state. But even taken as true, Western Digital's assertions do not persuade the Court that Aiting Li used Western Digital's marks "maliciously, knowing that [their] use was contrary to law." *See Sovereign Order of Saint John of Jerusalem*, 119 F.3d at 1244.

As discussed above, Aiting Li falsely used Western Digital's trademarks in commerce, in connection with goods, in such a way that was likely to cause mistake by another person. She is therefore liable under 15 U.S.C. § 1125(a), whether or not her infringement was knowing or intentional. But infringement liability (which is strict) captures far more conduct than fee-shifting liability (which requires "malice" or "fraud") under the Lanham Act. The Court finds that Aiting Li's infringement does not present an "exceptional case," and attorney fees should not be awarded.

(5:17CV2653)

Western Digital, therefore, is entitled to recover the litigation costs of this action from Aiting Li but not attorney fees.

### 3. Permanent Injunction

Western Digital asks for a permanent injunction to be entered as against Yong Xian Lau, Yong Chen, Wendy Chen, Li Bo Liang, Li Juan Zhou, and Zhou Ran Chen. ECF No. 43-1 at PageID#: 1194. Because the Court grants summary judgment in favor of named individual Defendants not including Aiting Li, the request for a permanent injunction is denied. The preliminary injunction (ECF No. 21) is hereby dissolved as against all Defendants not including Aiting Li.

Western Digital does not request permanent injunctive relief as against Aiting Li. *See* ECF No. 32.

### IV. Conclusion

For the foregoing reasons, named Defendant Chi Fan Lau is dismissed (ECF No. 42), Western Digital's motion for summary judgment against Aiting Li (ECF No. 32) is granted as to her liability, Western Digital's motion for default and default judgment against the remaining named individual Defendants (ECF No. 43) is denied, and those Defendants' cross-motion for summary judgment against Western Digital (ECF No. 50) is granted as to all claims. The preliminary injunction (ECF No. 21) is hereby dissolved as against all Defendants not including Aiting Li.

Because it was filed without the Court's leave, Aiting Li's sur-reply in opposition to summary judgment (ECF No. 49) is stricken.

25

Aiting Li is additionally liable for Western Digital's litigation costs but not attorney fees. Western Digital shall submit a consolidated motion for damages and litigation costs against Aiting Li within 30 days of the date of this Order. Aiting Li shall respond within 30 days of Western Digital's motion, and Western Digital shall reply within 14 days of that opposition. A hearing to determine the appropriate amount of damages and costs will be scheduled.

Although Western Digital presented claims in its Complaint (ECF No. 1) that it did not expressly pursue in its motion for summary judgment (ECF No. 32), it appears that Western Digital intends for this Order to dispose of all allegations of liability. Within 30 days of the date of this Order, Western Digital shall indicate whether it wishes to proceed on its remaining claims. Absent any such indication by that date, the Court will dismiss the remaining claims with prejudice.


IT IS SO ORDERED.


May 8, 2019                          */s/ Benita Y. Pearson*
Date                                 Benita Y. Pearson
                                     United States District Judge